AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. 2:22-mj-53 |
| CHARLES ASUMADU | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  10/17/2016 - 05/08/2020  in the county of  Franklin  in the
Southern District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1956(h) | Money Laundering Conspiracy |
| 18 U.S.C. 1956(a)(1)(B)(i) | Money Laundering |
| 18 U.S.C. 1957 | Money Laundering |

This criminal complaint is based on these facts:

See attached affidavit

☐ Continued on the attached sheet.

*Complainant's signature*

Shawn Mincks, Special Agent, IRS-CI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 28, 2022

City and state: Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AFFIDAVIT
IN SUPPORT OF CRIMINAL COMPLAINT

I, Shawn Mincks, Special Agent, U.S. Department of the Treasury, Internal Revenue Service, Criminal Investigation, being duly sworn, depose and say that:

### Introduction and Purpose

1. I am a Special Agent with IRS-Criminal Investigation and have been so employed since 2008. I have received specialized law enforcement training at the Federal Law Enforcement Training Center, Glynco, Georgia and additional specialized training from the IRS. My duties as a Special Agent include conducting investigations of individuals and businesses that have violated Federal Law, particularly those laws found under Title 18, Title 26 and Title 31 of the United States Code. I have participated in multiple such investigations, including several investigations related to individuals who launder funds derived from romance and other international fraud schemes.

2. I am assigned to pursue a federal criminal investigation of Charles Asumadu and other co-conspirators. I make this affidavit in support of the filing of a Criminal Complaint against Asumadu and contend there is probable cause to believe that Asumadu and others were engaged in a conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and personally committed or caused to be committed multiple acts in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and/or 18 U.S.C. § 1957.

3. The information in this affidavit is either personally known to me based upon my experience, investigative activities, analysis of records and interviews; or it has been relayed to me by other agents and/or law enforcement personnel. This affidavit is being submitted for the limited purpose of filing a Criminal Complaint, and I have not included each and every fact know to me concerning the investigation. I have set forth only the facts I believe are necessary to support the requested Criminal Complaint.

### Evidence of Probable Cause

4. Through interviews and analysis of bank records and other documentation, your affiant believes the investigation to date tends to show that Asumadu and others have been engaged in a conspiracy to commit money laundering in that they have knowingly and willfully facilitated the receipt, concealment and transfer of funds derived from so-called "Romance Scam" victims.

5. Perpetrators of the scams post fake profiles on various dating websites and social media applications, then individuals throughout the United States and other countries are contacted by or enticed to initiate contact with the perpetrators. After contacting the victims online, the perpetrators use email, instant messaging services, text messaging and phone calls to build a relationship of trust with the victims. Once trust is gained, the perpetrators convince the victims to provide money purportedly for various investments or need-based reasons. The perpetrators tell many of the victims that they are overseas. The perpetrators further explain, for example, that they have located a gold or diamond mine through which they can both become very wealthy if the victim invests money; or have had financial or legal trouble and need assistance. The perpetrators then contact bank account holders in the United States directly or through other intermediaries. The bank account holders include individuals such as Asumadu who are willing to accept fraudulent proceeds into their bank accounts. The victims then are directed by the perpetrators to wire transfer, direct transfer or deposit money into the bank accounts controlled by Asumadu and/or other co-conspirators. Evidence indicates that many of these bank accounts were opened in the names of business entities controlled by the co-conspirators. The victims provide the funds with the expectation that the money will be invested or used to assist their online "friend."

6. The funds are not used in the manner the victims believe it will be used. Contemporaneous and subsequent to the wire transfers, account transfers and deposits received by the Asumadu and others from the victims, they disposed of the funds through cash withdrawals; checks and transfers to parties known to the co-conspirators; international and domestic wire transfers; personal expenditures; and purchases of official checks. None of the victims receive any return on their "investments" or any of their money back. The loss to all victims exceeds $5 million.

7. The affiant believes that evidence garnered so far in the investigation tends to show Asumadu knew that the funds he was receiving and transmitting, or causing to be received and transmitted, were derived from some kind of unlawful activity, and the funds were, in fact, derived from a specified unlawful activity, namely wire fraud (18 U.S.C. § 1343). From the recipient bank accounts, the funds were not used in the manner promised to the victims of the fraud. Instead, the funds were transacted in a fashion designed to conceal the nature, source, location, ownership and control of the funds through cash withdrawals and other mechanisms, in violation of 18 U.S.C. § 1956 (a)(1)(B)(i). Additionally, many debits were in excess of $10,000, in violation of 18 U.S.C. § 1957. Since he was working in concert with others, the activity was in violation of 18 U.S.C. § 1956(h).

**Relevant Bank Accounts and Entities**

8. Asumadu established Dr. C. Asumadu Health Care Agency on March 15, 2017 by filing documents with the Ohio Secretary of State located in Columbus, Ohio. Querying "Charles Asumadu" on www.docinfo.org, which is a nationwide database of licensed doctors, returns "No Results Found." Asumadu opened and controlled the business bank accounts below, among others, in the name of Dr. C. Asumadu Health Care Agency.

Asumadu was the only signer on all accounts.

   a. March 16, 2017 – August 20, 2018: PNC Bank account # xx2138 (PNC xx2138). When opening the account, Asumadu provided his home address as 3364 Thornapple Circle North, Columbus, Ohio. This would remain the assigned address through closure of the account.

   b. June 19, 2017 – October 31, 2018: JP Morgan Chase Bank account # xx6262 (JPMC xx6262). This account was opened at the Easton Town Center branch in Columbus, Ohio. When opening the account, Asumadu provided his home address as 3364 Thornapple Circle North, Columbus, Ohio. This would remain the assigned address through closure of the account.

9. Asumadu also opened and controlled personal bank accounts on which he was the only signer. Some notable accounts are listed below.

   a. November 30, 2015 – May 9, 2017: Fifth Third Bank account # xx1992 (FTB xx1992). When opening the account, Asumadu provided his home address as 3364 Thornapple Circle North, Columbus, Ohio. This would remain the assigned address through closure of the account.

   b. July 6, 2016 – December 8, 2016: US Bank account # xx6952 (US Bank xx6952). This account was opened at a bank branch on State Route 161 in Columbus, Ohio. When opening the account, Asumadu provided his home address as 3364 Thornapple Circle North, Columbus, Ohio. This would remain the assigned address through closure of the account.

   c. October 31, 2016 – July 20, 2017: Bank of America account # xx6382 (BOA xx6382). When opening the account, Asumadu provided his home address as 3364 Thornapple Circle North, Columbus, Ohio. This would remain the assigned address through closure of the account.

**Witness Statements and Transactions**

10. Law enforcement has interviewed or reviewed statements by several individuals who deposited, wired, or otherwise sent funds to bank accounts in the control of Asumadu. Consideration of the witness statements and analysis of bank accounts in Asumadu's control show that between October 17, 2016, and May 8, 2020, Asumadu received more than $700,000 in funds from victims of romance fraud. He then conducted or caused to be conducted financial transactions to launder the fraud proceeds.

11. Review of the records of the bank accounts in Asumadu's control also did result in finding revenue or expenses that would be typical of a medical or health care company, such as payments from private insurance companies; payments from Medicare, Medicaid, or other government programs; purchases of medical supplies; and regular payroll to other individuals.

12. According to an interview with Person 3, whose identity is known to the affiant, Person 3 met somebody she believed to be named David Brown on social media in 2016 after her husband died.  Person 3 communicated with Brown via social media and text messaging applications, and Brown eventually told Person 3 that he loved her.  Brown asked Person 3 to send him money to start a business, and Person 3 expected to be repaid.  After seeing a television special, Person 3 realized she was the victim of a scam.  Bank records show that on September 6, 2016, Person 3 wired $15,000 to a PNC Bank account controlled by Conspirator 2.

13. Bank records show that on December 15, 2016, Person 3 also deposited $3,000 cash into BOA xx6382, controlled by Asumadu.

14. Bank records show that after receiving the funds from Person 3 into BOA xx6382, Asumadu engaged in the following financial transaction involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a.  December 16, 2016 - $2,900 transfer to FTB xx1992, controlled by Asumadu.

15. According to an interview with Person 4, whose identity is known to the affiant, Person 4 met somebody she believed to be named Michael Wayne James on social media approximately six years ago.  Person 4 later also communicated with James via text.  James told Person 4 he was in the military.  Eventually, James asked Person 4 for money to assist him getting home.  Person 4 later told James that she could not send any more money, and James "got nasty" with her.  Person 4 then cut off communications with James.  Bank records show that on October 17, 2016, Person 4 wired $12,700 to US Bank xx6952, controlled by Asumadu.

16. Bank records show that after receiving the funds from Person 4 into US Bank xx6952, Asumadu made withdrawals of an unknown nature of $5,000 and $5,014 on October 18, 2016.

17. According to an interview with Person 5, whose identity is known to the affiant, Person 5 met somebody she believed to be named Giovani Bellini on a dating website sometime in 2017.  Person 5 and Bellini communicated several times a day, every day, via texts and calls.  Bellini told Person 5 that he lived in Georgia but had gotten a construction contract in Ghana.  After arriving in Ghana, Bellini began to ask Person 5 for money supposedly for expenses related to the contract.  After approximately six months of sending money, Bellini told Person 5 she should get a loan on her home.  Person 5 realized that she was being scammed.  Bank records show that between March 20, 2017 and April 4, 2017, Person 5 deposited $24,000 cash into BOA xx6382, controlled by Asumadu.

18. Bank records show that on March 6, 2017 and March 22, 2017, Person 4 also deposited $6,000 cash and $22,800 in the form of personal check, respectively, into BOA xx6382, controlled by Asumadu.

19. Bank records show that on April 3, 2017, Person 3, also deposited $2,000 cash into BOA xx6382.

20. Bank records show that after receiving the funds from Person 3, Person 4 and Person 5 into BOA xx6382, Asumadu engaged in the following financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. March 6, 2017 - $5,300 transfer to FTB xx1992, controlled by Asumadu;

    b. March 16, 2017 - $6,900 wire to PNC xx2138, controlled by Asumadu;

    c. March 27, 2017 - $4,700 wire to PNC xx2138, controlled by Asumadu;

    d. March 27, 2017 - $4,400 transfer to PNC xx2138, controlled by Asumadu;

    e. March 29, 2017 - $16,036 wire to Company 1 in Ghana;

    f. March 30, 2017 - $1,500 transfer to PNC xx2138, controlled by Asumadu;

    g. April 4, 2017 - $14,165 wire to Company 1 in Ghana.

21. Bank records show that on April 13, 2017, Person 5 also deposited $12,000 cash into a Bank of America account controlled by Conspirator 2.

22. Bank records show that after receiving the funds from Person 5 into the Bank of America account, Conspirator 2 engaged in the following financial transaction involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. April 13, 2017 - $11,000 wire to Company 1 in Ghana.

23. According to an interview with Person 8, whose identity is known to the affiant, Person 8 met somebody she believed to be named James Logan a few years ago on social media during a time when her marriage was falling apart. Logan claimed he was a military doctor serving in Afghanistan. Logan later convinced Person 8 to send money to pay fees related to an alleged inheritance consisting of cash, gold and jewelry. Person 8 eventually realized she had fallen victim to a scam and filed a complaint with the FBI. Bank records show that on June 21, 2017, a cashier's check in the amount of $15,000 purchased by Person 8 was deposited into a Bank of America account controlled by Conspirator 2.

24. Bank records show that the funds from Person 8 were commingled with other funds in the Bank of America account. Conspirator 2 engaged in the following financial transaction, among others, involving the proceeds of wire fraud with the commingled

5

funds. The transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. June 29, 2017 - $22,000 wire to Company 1 in Ghana.

25. Bank records show that on June 26, 2017, Person 8 also wired $10,000 to JPMC xx6262, controlled by Asumadu.

26. Bank records show that after receiving the funds from Person 8 into JPMC xx6262, Asumadu engaged in the following financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. June 27, 2017 - $5,500 cash withdrawal;

    b. June 27, 2017 - $3,000 cash withdrawal at an ATM located on Morse Road in Columbus, Ohio.

27. According to an interview with Person 9, whose identity is known to the affiant, Person 9 met somebody she believed to be named David Schwartz on a dating website sometime in 2016 or 2017. Schwartz communicated with Person 9 via email and a phone application. Schwartz told Person 9 he was in Turkey on an oil platform. Schwartz eventually asked Person 9 to send him money for his goddaughter who had been arrested and after his mother allegedly died. Person 9 sent money at Schwartz's direction and expected to be repaid. She was not repaid. Bank records show that on August 10, 2017, Person 8 wired $12,000 into PNC xx2138, controlled by Asumadu.

28. Bank records show that the funds from Person 9 were commingled with other funds in PNC xx2138. Asumadu engaged in the following financial transaction, among others, involving the proceeds of wire fraud with the commingled funds. The transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. August 11, 2017 - $10,955 wire to Company 1 in Ghana.

29. Bank records show that on December 11, 2017, a cashier's check in the amount of $40,000 purchased by Person 9 was deposited into a JP Morgan Chase Bank account, controlled by Conspirator 2.

30. Bank records show that after receiving the funds from Person 9 into the JP Morgan Chase Bank account, Conspirator 2 engaged in the following financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. December 13, 2017 - $23,003.15 wire to Company 1 in Ghana;

  b. December 19, 2017 - $13,600 wire to Company 1 in Ghana.

31. According to an interview with Person 10, whose identity is known to the affiant, Person 10 met somebody she believed to be named Kevin Alberto on a dating app. Alberto told Person 10 he was on a ship and needed money to get off the ship and into the United States. Alberto instructed Person 10 to send money to his friends, Conspirator 3 and Conspirator 4. Person 10's bank eventually advised her that she was likely involved in a fraudulent scheme. Bank records show that on September 25, 2017, Person 10 wired $22,500 to PNC xx2138, controlled by Asumadu.

32. Bank records show that the funds from Person 10 were commingled with other funds in PNC xx2138. Asumadu engaged in the following financial transactions, among others, involving the proceeds of wire fraud with the commingled funds. The transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. September 25, 2017 - $8,000 cash withdrawal at a bank branch in Columbus, Ohio;

    b. September 26, 2017 - $9,500 cash withdrawal at a bank branch in Columbus, Ohio.

33. According to an interview with Person 13, whose identity is known to the affiant, Person 13 was contacted on social media several years ago by somebody she believed to be named James Stewart. Stewart told Person 13 that he was from San Diego but was serving in the army in Syria. Eventually, Stewart told Person 13 that his father had sold a business and acquired some assets. Stewart asked Person 13 for money to secure the assets and pay for his travel home. Person 13 sent money to pay for alleged fees at Stewart's request before her son and daughter discovered she was being scammed. Bank records show that on April 6, 2018, Person 13 purchased a cashier's check in the amount of $50,000 payable to Dr. C. Asumadu Health Care Agency. The check was deposited into JPMC xx6262, controlled by Asumadu, the same day.

34. Bank records show that after receiving the funds from Person 13 into JPMC xx6262, Asumadu engaged in the following financial transactions, among others, involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. April 7, 2018 - $30,000 transfer to an account controlled by a third party;

    b. April 7, 2018 - $5,000 cash withdrawal;

    c. April 7, 2018 - $3,000 cash withdrawal at an ATM on Morse Crossing in Columbus, Ohio;

    d. April 11, 2018 - $3,000 cash withdrawal at an ATM on Cleveland Avenue in

Columbus, Ohio;

e. April 11, 2018 - $2,000 cash withdrawal.

35. Bank records show that on June 19, 2018 Person 13 transferred $5,000 from her JP Morgan Chase Bank account into a JP Morgan Chase Bank account controlled by Conspirator 2.

36. Bank records show that the funds transferred to the JP Morgan Chase Bank account were commingled with other funds. Conspirator 2 engaged in the following financial transaction, among others, involving the proceeds of wire fraud with the commingled funds. The transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

a. June 20, 2018 - $19,700 wire to Company 1 in Ghana.

37. Bank records show that on June 20, 2018 Person 13 transferred $6,000 from her JP Morgan Chase Bank account into a JP Morgan Chase Bank account controlled by Conspirator 2.

38. Bank records show that the funds transferred to the JP Morgan Chase Bank account were commingled with other funds. Conspirator 2 engaged in the following financial transaction, among others, involving the proceeds of wire fraud with the commingled funds. The transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

a. June 22, 2018 - $4,000 check issued to Conspirator 4.

39. Person 13 provided documentation to the affiant on which she stated that, in addition to those funds sent to Asumadu and Conspirator 2, she sent funds to Conspirator 3 at Stewart's direction.

40. According to a complaint filed by Person 15 on the FBI Internet Crime Complaint Center (IC3) on November 30, 2017, Person 15 met somebody she believed to be named Christopher Brooks on a dating website. Brooks told Person 15 he was in the oil businesses and his partner was injured in a hurricane. Brooks convinced Person 15 to send money to different recipients related to the alleged injury and oil business, including to Conspirator 4 and Conspirator 5.

a. According to her complaint, Person 15 provided $40,000 to Conspirator 5 between September 22, 2017 and September 26, 2017. On September 29, 2017, Conspirator 5 purchased a cashier's check payable to Dr. C. Asumadu Health Care. The check was deposited on the same day into JPMC xx6262, controlled by Asumadu.

41. According to a complaint filed by Person 16 on IC3 on April 12, 2018, Person 16 met

8

somebody she believed to be named John Brown on social media. Brown told Person 16 he was in the army in Syria. Brown eventually began asking Person 16 for money to assist him getting home. Person 16 sent money Dr. C. Asumadu Health Care Agency at Brown's request. Bank records show that between February 26, 2018 and April 2, 2018, Person 16 wired $11,150 to JPMC xx6262, controlled by Asumadu.

## Conclusion

42. Based on the foregoing, I contend that Asumadu and others are engaged in a conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and that Asumadu personally committed or caused to be committed multiple acts in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and/or 18 U.S.C. § 1957.

_____
Shawn A. Mincks
Special Agent, IRS-CI

Subscribed and sworn to before me

This ___28th___ day of ___January___, ___2022___.

_____
Kimberly A. Jolson
United States Magistrate Judge

9